## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL SCHAEDER, PAUL SCHAEDER, JR. and JACQUELINE SCHAEDER, | CIVIL ACTION NO.: 3:19-CV-09446 |
| Plaintiffs, | *Civil Action* |
| v. | |
| US BANK NA, AS TRUSTEE OF GPMFT 2007-AR1, OCWEN LOAN SERVICING, LLC  and PHELAN HALLINAN DIAMOND & JONES LLP | |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiffs, PAUL SCHAEDER, PAUL SCHAEDER, JR. and JACQUELINE SCHAEDER ("Plaintiffs"), by and through his undersigned counsel, hereby submit this Complaint against Defendants, ("Defendants") , and in support thereof, states as follows:

## PARTIES

1.     Plaintiffs are individual residents of the State of New Jersey with their primary residential address located at 1094A Long Beach Blvd Long Beach Township NJ 08008.

2.     Upon information and belief, Defendant US BANK NA, AS TRUSTEE OF GPMFT 2007-AR1 (US Bank) is a company with its principal place of business located at 425 WALNUT STREET CINCINNATI, OH 45202-3923.

3.     Defendant Ocwen Loan Servicing LLC (Ocwen) is a company organized and existing pursuant to the rules and laws of Florida with its principal place of business located at 1661 Worthington Rd #100, West Palm Beach, FL 33409..

4.      Defendant PHELAN HALLINAN DIAMOND & JONES LLP (Defendant Attorneys), is and was, a firm  with a principle place of business located at/within 1617 John F Kennedy Blvd #1400 One Penn Center,  Philadelphia, PA 19103.

## JURISDICTION AND VENUE

5.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this matter involves federal claims arising under federal law, thereby invoking the Court's federal question jurisdiction.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is diversity in citizenship among Plaintiffs, a resident of the State of New Jersey, and Defendants and there is an amount in controversy that exceeds $75,000.00.

7.      This Court has personal jurisdiction over Defendants, as Defendants has had the requisite minimum contacts with the State of New Jersey and Defendants has and continues to regularly conduct business in the State of New Jersey.

8.      Venue lies in the United States District Court for the District of New Jersey, as a substantial part of the property that is the subject of this action is located in the State of New Jersey.

9.      Further, venue lies in the United States District Court for the District of New Jersey, as a substantial part of the events or omissions upon which Plaintiffs' claims are based has occurred in the State of New Jersey.

## FACTS COMMON TO ALL COUNTS

1.  This case has a long and stories history from the underlying Foreclosure case, which is not being incorporated into the claims, but incorporated so the court is aware of the history of the case.

2.  The first action of this matter started back on September 5, 2008.

2

3. There was no actual assignment at the time of filing from the originator to any of the Defendants, only that it was "in the process of being recorded".

4. Defendant attorneys eventually requested a default judgment on July 20, 2010.

5. Mr. and Mrs. SCHAEDER was not aware of it until late 2010.

6. The original mortgage broker, Sterling Financial and the title company, Clear Advantage were both forced to close for either submitting false mortgage closing documents and false mortgage applicant financials.

7. Then, the case sat dormant for almost **three years.**

8. During that time, Mr. and Mrs. SCHAEDER attempted to modify the loan, but Defendant Attorneys rebuffed those attempts at every turn.

9. The original borrower filed bankruptcy awhile ago and officially walked away and was discharged the debt and wants off both deeds.

10. Mr. and Mrs. SCHAEDER were attempting to modify but were told that because they were not the borrower, Defendants would not discuss anything with them or consider revising the paperwork to them, even though there was a clear intent to pay.

11. Plaintiffs also filed complaints with the CFPB, but they were unsuccessful.

12. Then, a motion to amend the judgment was filed on July 10, 2013.

13. This was not served on Mr. and Mrs. SCHAEDER, even though they knew his address and could have served him, and instead, an uncontested judgment was submitted on December 11, 2013.

14. Then, the case continued to sit dormant for years.

15. A "Sandy-Impacted Forbearance Certification" was, in fact, issued and is still in place until July 1, 2019.

3

16. Defendants however, ignored this forbearance and instead, moved forward with scheduling sheriff sales and an eviction to the detriment of Mr. and Mrs. SCHAEDER.

17. Ultimately, a sale did go through and an improper eviction proceeded as well, causing further substantial damage to Plaintiffs.

18. Contrary to defendants' claims Plaintiffs did not abandon our property since Superstorm Sandy on October, 29, 2012.

19. Plaintiffs have since rebuilt, reconstructed, renovated it once and then elevated, renovated, and reconstructed it again and finally received the 2nd CO from Long Beach Township July, 2017.

20. Plaintiffs only received notice that US Bank was on the radar and claimed they wanted said property since January, 2013.

21. Prior to that Plaintiffs never received any statements or claims on said property from US Bank.

22. Since then, Plaintiffs engaged with their representatives, Ocwen Loan Services, ombudsman service representatives regarding assumption, modification and principle reduction due to the upside down loan balance held by the mortgage holder.

23. Ocwen would not negotiate due to us not being the mortgage holder, yet the entire time Plaintiffs were still defendants.

24. So, Plaintiffs asked to negotiate with US Bank the proper appraisal value Plaintiffs know to be true: $540,000.00 to buy it back, because if Plaintiffs had walked away from the property on the morning after Sandy on October 30,2012, the empty lot or knock down price would have been $450,000.00.

25. Today, via our certified appraisal it is $540,000.00.

26. The amount of money Plaintiffs spent on this house since Sandy can be itemized and documented to the court, so Plaintiffs want to demonstrate that US Bank cannot simply come out of nowhere and take the property from Plaintiffs and the market value of the property today that is claimed on the 1099-C would not have resulted without Plaintiffs' work. (See Exhibit A).

27. The court should factor in all of the historical factors that can be backed up by endless photos, bank statements, NJDCA testimonies, NJSHRAP testimonies, FEMA documentation, Township payment histories, and us as the NJDCA designated General Contractors of the project since Plaintiffs enrolled in the RREM program in 2013. (See Exhibit B).

28. Further, there is unresolved and unfinished business regarding the property with the State of New Jersey's Division of Community Affairs that is the cause of Defendants as well (See Attached).

29. Plaintiffs and the NJDCA and FEMA have spent over $300,000.00 on the property since Superstorm Sandy in order to have it in the shape it is in today.

30. That is the primary reason why both appraisals came in at the numbers they did. (See Exhibit C).

31. If Plaintiffs had not taken the action they did since Sandy hit, the property would have been left condemned, an eyesore and valued only for it's vacant lot/knockdown 2012 price of $450,000 or below.

32. Further, the amount of damages incurred because of Defendants is actions is $480,000.00 in damages.

33. $380,000.00 for the following:

a. Schaeder's paying for since October 2012 to relocate, rebuild and renovate twice, elevate and maintain the property location at Lot 1, Block 18.94, address 1094A Long Beach Blvd, North Beach, NJ 08008.

b. Property taxes paid since 2012.

c. Water/Sewer township payments since 2012.

d. Re-establishing water/sewer and all plumbing service since 2012.

e. Electrical bills since 2012.

f. Re-establishing electrical service to the home since 2012.

g. Gas bills since 2012.

h. Re-establishing gas line service to the home since 2012.

i. Relocation fees, travel, rental fees since October 30, 2012 and several different locations to sustain normal living conditions for the Schaeder family, until May 2017.

j. Enclosing and pouring a new foundation downstairs since elevation completion and the CO in 2017.

k. Adding a third full bath, tiling and 3rd zone HVAC system.

l. Additional Gas, electrical and plumbing for ground floor.

m. Yard beautification, landscaping, shrubs, trees, stones.

n. Fencing entire yard

o. Weed control

p. Decking and siding additions.

q. Compliance with township all zoning and code enforcements and fees.

r. Roof repair after elevation

s. Painting both exterior and interior since elevation.

    t.  $100,000.00 for General Contractor (GC) fees for Paul Schaeder at $20.000.00 per year since 2014 when the NJDCA-SRD designated him GC to hire, oversee and handle all work done by sub-contractors hired by Schaeder and who were authorized by the NJDCA-SRD; and

    u.  Legal fees for modification attempts and foreclosure defense.

34. Further, Plaintiffs have suffered substantial emotional distress.

35. Additionally, there are third party valuations now as well: This property was assessed for $102,300.00. The land was assessed at $525,000.00 and the improvements to the property were assessed at $627,300.00.  (See Exhibit D).

36. That means that the total value of the improvements done solely by Plaintiffs is now valued at $525,000.00 at a minimum.

37. These damages have occurred outside the realm of the foreclosure case, and were not have been considered germane in that matter.

### COUNT ONE – ALL DEFENDANTS
### FDCPA VIOILATION - UNLAWFUL DEBT COLLECTION

1.    Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

2.    The FDCPA applies to foreclosure collection actions such as the one brought in this case *Kaymark v. Bank of America NA*, No. 14-1816 (3d Cir. 2015).

3.    As stated in the recent case, *Tepper v Amos*, No. 17-2851 3rd Cir., Aug. 7, 2018, The Court discussed the "default" test and ultimately choose to say that, based on the Supreme court case of Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718 (2017), it would no longer apply.

4.     Instead, the court chose to follow the plain text of the statute: "an entity whose principal purpose of business is the collection of any debts is a debt collector regardless whether the entity owns the debts it collects. Id.

5.     "The FDCPA creates two `mutually exclusive' categories, debt collectors and creditors, but only debt collectors are regulated by the statute." Bank of N.Y. Mellon Trust Co. N.A. v. Henderson, 862 F.3d 29, 34 (D.C. Cir. 2017) (citation omitted).

6.     The FDCPA defines the term "debt collector" in two ways: (1) any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

7.     On the other hand, the FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Generally, a loan servicer is not considered a "debt collector" under the FDCPA "unless the debt was in default when it was obtained by the servicer." McAndrew v. Deutsche Bank Nat'l Trust Co., 977 F. Supp. 2d 440, 448 (M.D. Pa. 2013) (citing 15 U.S.C. § 1692a(6)(F)).

8.     Further, the FDCPA is a "remedial legislation" aimed, as already noted, "to eliminate abusive debt collection practices by debt collectors." Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015) (quoting § 1692(e); Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013)).

9.     Importantly, it applies only to "debt collectors," Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000), defined as any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition); or (2) "who regularly collects

or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects for another," or "regularly collects," definition).1 § 1692a(6).

10. Further, and most importantly, "The FDCPA is a strict liability statute to the extent that it imposes liability without proof of an intentional violation." Allen ex. rel, Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011).

11. As stated previously, the Supreme Court, in Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718 (2017), has recently repealed the "default" test.

12. Debtors claimed that Santander Bank, which had purchased their loans already in default and attempted to collect on them, met the second definition of "debt collector," i.e., one who "regularly collects or attempts to collect . . . debts owed or due . . . another." Id. at 1721 (quoting § 1692a(6)).

13. They asserted as well that the Bank met the "principal purpose" definition, but the Court did not review that claim because it was not litigated in the District Court. Id.

14. The Supreme Court began "with a careful examination of the statutory text," in particular the definition's limitation to debts "owed . . . another." Id.

15. It reasoned that "by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." Id.

16. This language does not suggest that "whether the owner originated the debt or came by it only through later purchase" determines if it is a debt collector. Id.

17. "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" Id.

18. Hence the Bank, which collected debts for its own account, did not meet the "regularly collects for another" definition. Id. at 1721–22. The Court also addressed the suggestion that everyone who attempts to collect debt is either a "debt collector" or a "creditor" with respect to a particular debt, but cannot be both. Id.

19. "[S]potting (without granting) th[at] premise," it stated that a company such as the Bank, which collects on debt it purchased for its own account, "would hardly seem to be barred from qualifying as a creditor under the statute's plain terms." Id.

20. But excluded from the definition of "creditor" are those who acquire a debt after default when the debt is assigned or transferred "solely for the purpose of facilitating collection of such debt for another." Id. (quoting § 1692a(4)).

21. As to the RESPA claim, the court makes clear in Bukowski v. Wells Fargo, that if a loan servicer fails to abide by its borrower inquiry obligations, RESPA allows a Plaintiffs to recover two types of damages. Bukowski v. Wells Fargo, No. 17-3253 3rd Cir., December 13, 2018.

22. The borrower may recover actual damages if he or she proves that (1) the loan servicer violated a particular RESPA requirement and (2) actual damages were sustained "as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). See also Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) (*citing Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001) (en banc) (noting that "there must be a 'causal link' between the alleged [RESPA] violation and the damages"). Second, a borrower may seek statutory damages up to $2,000 if the damages are based on "a pattern or practice of noncompliance. . . ." 12 U.S.C. § 2605(f)(1)(B).

23. Although the two terms are often conflated, the "holder" of a mortgage note is distinct from the "owner" of a mortgage note. Most recently, the Third Circuit examined the distinction

between a mortgage "holder" and a mortgage "owner" in the decision of *In re Merritt,* 702 F. App'x 90 (3d Cir. 2017) (nonprecedential).

24.     In that case, the Third Circuit explained that the "holder" of a mortgage note is one who is in possession of the note and is qualified to enforce the note through foreclosure or other means. Id. at 93-94.

25.     The court explained, however, that unlike an "owner" of a note, the "holder" may not be entitled to the economic benefits from payments received thereon. Id. at 93; see also Miller v. Homecomings Fin., LLC, 881 F. Supp. 2d 825, 829 (S.D. Tex. 2012) (citing SMS Fin., LLC v. ABCO Homes, Inc., 167 F.3d 235, 239 (5th Cir. 1999)) ("The owner of a note need not be a holder, because the two issues are separate and distinct."); Dale A. Whitman & Drew Milner, Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note, 66 ARK. L. REV. 21, 25 (2013) (explaining that ownership of a note "means the right to economic benefits of the note" and that while a party other than the owner may have rights to negotiate modifications with a borrower and to enforce the note, the owner is "the party to whom the proceeds of the loan will ultimately be paid.").

26.     The Defendants knew, should have known, and willfully commenced a foreclosure debt collection action in the State Court by: relying on improper paperwork when the foreclosure case was commenced as well as through the life of the case, and ignored various attempts to bring the debt current.

27.     When Plaintiffs attempted to reach out to Defendants to try and make payments they were stonewalled.

28.     The Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiffs that are outlined

more fully above and, as a result, Defendants are liable to compensate Plaintiffs for the full amount of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

29.     Additionally, a Request For Information was sent, and simply ignored.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

    a.    Awarding Plaintiffs actual damages against Defendants;
    b.    Awarding Plaintiffs damages for emotional distress against Defendants;
    c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
    d.    Awarding Plaintiffs punitive damages against Defendants;
    e.    Imposing any other appropriate monetary sanctions against Defendants; and
    f.    Any other relief that this Court deems just and proper.

### COUNT TWO – ALL DEFENDANTS

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-2);

### ACTIONABLE PURSUANT TO N.J.S.A. 56:8-19;

30.     The Plaintiffs adopts the allegations set forth in the previous paragraphs as though fully set forth herein by reference.

31.     The Defendants designated in Count Two have each used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiffs rely upon such concealment, suppression or omission.

32.     The Plaintiffs avers the unfair, deceptive, and unlawful practices by the Defendants misled and deceived Plaintiffs, resulting in damages thereby, constituting unlawful practices in violation of N.J.S.A. 56:8-2, and has caused injury to Plaintiffs as contemplated by N.J.S.A. 56:8-19 in actual damages of emotional distress, loss of monies paid towards a

*fraud in factum*, and other costs to defend the Plaintiffs.

33.  At all times relevant and material hereto, then the Plaintiffs was a consumer of the Defendants goods and services and as such the conduct of the Defendants and the transaction was governed by the New Jersey Consumer Fraud Act N.J.S. A. 56:8-1 et seq.

34.  At all times relevant and material hereto the Defendants did violate the New Jersey Consumer Fraud Act by engaging in deceptive and fraudulent practices as stated above.

35.  The aforementioned actions were a violation of The False Claims Act 31 U.S.C. §§ 3729 - 3733, as in case *Gonzalez v. Wilshire Credit Corp.*, Supreme Court of New Jersey, August 29, 2011.

36.  In *Cox v. Sears Roebuck*, September 15, 1994 138 N.J. 2 A-123 September term 1993." the NJ Supreme Court held: "The amendment to the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, provides for private causes of action, with an award of treble damages, attorneys' fees, and costs."

37.  Upon "strict scrutiny" application, the Court would be compelled to protect Plaintiffs against blatant fraud being perpetrated upon Defendant as well as the Court under the "color of law".

38.  To do otherwise would be a travesty of justice.

39.  "Like most remedial legislation, the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, should be construed liberally in favor of consumers."

40.  "An improper debt or lien against a consumer fraud Plaintiffs may constitute a loss under the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, (the Act) because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."

41.  The judgment was reversed and remanded to trial court with treble the damages.

42.     The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in his favor and against Defendants, as follows:

       a.    Awarding Plaintiffs actual damages against Defendants;
       b.    Awarding Plaintiffs damages for emotional distress against Defendants;
       c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
       d.    Awarding Plaintiffs punitive damages against Defendants;
       e.    Awarding Plaintiffs treble damages against Defendants;
       f.    Imposing any other appropriate monetary sanctions against Defendants; and
       g.    Any other relief that this Court deems just and proper.

## COUNT THREE – ALL DEFENDANTS

### RESPODEAT SUPERIOR BETWEEN DEFENDANT ATTORNEYS AND OTHER DEFENDANTS

43.     Plaintiffs hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

44.     The established doctrine of respondeat superior provides that an employer is obligated to persons harmed by employees acting in the course of their employment.

45.     The "essence" of vicarious liability on the basis of respondeat superior is control. *Galvao v. G.R. Robert Constr. Co.*, 179 N.J. 462, 467 (2004).

46.     Underlying the doctrine is the principle that an employer who exercises control over an employee in the performance of his duties, "must answer for any injury that a third person may sustain from it." *Carter v. Reynolds*, 175 N.J. 402, 408 (2003). Vicarious liability "'is a rule of policy, a deliberate allocation of risk.'" *Carter v. Reynolds*, 345 N.J. Super. 67, 75

(App. Div. 2001) (*quoting Hinman v. Westinghouse Elec. Co.,* 88 Cal. Rptr. 188, 190 (Cal. 1970)), aff'd, 175 N.J. 402 (2003).

47.    Restatement 228(1) describes four factors that support a finding that an employee's act is within the scope of her employment: (1) the act is of a kind the employee is hired to perform, (2) the act occurs within authorized time and space limits, (3) the act is actuated at least in part by a purpose to serve the employer, and (4) if force is intentionally used it is not unexpectable.

48.    In this case, the above facts and court pleadings show all four factors have been met.

49.    At all material times hereto, Defendant(s) US BANK NA, AS TRUSTEE OF GPMFT 2007-AR1 and OCWEN were the employer of PHELAN HALLINAN DIAMOND & JONES LLP.

50.    The established doctrine of respondeat superior provides that an employer is obligated to persons harmed by employees acting in the course of their employment.

51.    This means, all actions taken by the Defendant Attorneys should be the responsibility of the other Defendants.

52.    As can be seen, there is a strong case for Respondeat Superior and as such, the employer(s) should be held responsible for the egregious actions taken by Defendant Attorneys.

**WHEREFORE,** the Plaintiffs demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

   a.  Punitive and/or treble damages;

   b.  Damages as permitted by statute;

   c.  Counsel fees; and

   d.  All other relief this Court deems necessary and just.

**COUNT FOUR – ALL DEFENDANTS**

## UNJUST ENRICHMENT

53. Plaintiffs hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

54. In establishing a claim for unjust enrichment, "a Plaintiffs must show both that Defendants received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 NJ. 539, 554 (1994).

55. Because of the numerous aforementioned misrepresentations, Defendants have been unjustly enriched at the expense of Plaintiffs, namely by the thousands of additional dollars included in the new fraudulent principal and all additional amounts claimed due.

56. Specifically, Defendants have inflated the amounts owed numerous times, as well as not incorporating in the amounts that have been paid, equity added to the property, nor even permit payments to be made Plaintiffs.

57. Defendants either through intentional actions or gross negligence have been enriched through their actions.

58. Accordingly, Defendants are attempting to receive a benefit through the sale of Plaintiffs's home.

59. Additionally, there are third party valuations now as well: "This property was assessed for $102,300.00. The land was assessed at $525,000.00 and the improvements to the property were assessed at $627,300.00."  (See Exhibit D).

60. That means that the total value of the improvements done solely by Plaintiffs is now valued at $525,000.00 at a minimum.

61. But for Plaintiff's **substantial** actions, these improvements would not exist.

**WHEREFORE,** the Plaintiffs demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

          a.  Punitive and/or treble damages;

          b.  Damages as permitted by statute;

          c.  Counsel fees; and

          d.  All other relief this Court deems necessary and just.

**COUNT FIVE – ALL DEFENDANTS**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

62.    Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

63.    Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

64.    At all times relevant and material hereto the Defendants did use electronic transmission, including fax, internet, money wire, in order to engage in deceptive and fraudulent practices, to wit: the deceptive, fraudulent and unlawful taking, theft and attempted conversion of Plaintiffs's property – all of which is in violation of 18 U.S. Code § 1343.

~~65.~~    Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

17

66. Defendants have established a 'pattern of activity', by an 'enterprise', which has committed 'predicate acts', those acts never occurring more than ten years apart from the previous act(s).

67. The RICO statute is intended to address repeat, rather than one-shot, criminal activity.

68. For this reason, "the heart of any RICO complaint is the allegation of a pattern of racketeering." *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987).

*69.*  The RICO statute also proscribes activities involving the "collection of an unlawful debt" as a separate basis for a RICO claim. *See 18 U.S.C. § 1962(a)-(c).*

70. Wary of seeing "garden variety" fraud cases dressed up as federal claims, federal courts have used the "pattern" element as a means "to trim off the excesses of a civil RICO claim." *See United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990).

71. Federal courts have revealed some difficulty articulating exactly what type of proof is sufficient to meet the "pattern" element. *See U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990) *("[A] definition for precisely what activity will constitute a 'pattern' for purposes of the RICO statute has eluded the federal courts.").*

72. Nonetheless, the aforementioned facts support this claim in this action.

73. In fact, the continued pursuit by Defendants clearly illustrates that the actions are still ongoing, to this day.

**WHEREFORE,** the Plaintiffs demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

        a.  Punitive and/or treble damages;

        b.  Damages as permitted by statute;

        c.  Counsel fees; and

d.   All other relief this Court deems necessary and just.

**COUNT SIX – ALL DEFENDANTS**
VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT 12 USC Section 2601
et seq and 12 CFR Part 1024 (Regulation X) - EMOTIONAL DISTRESS PURSUANT
TO THE FAIR DEBT COLLECTION PRACTICES ACT

74.   Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

75.   The actual damages portion of RESPA can be interpreted in a manner similar to the Fair Debt Collection Practices Act ("FDCPA"). *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 664 (E.D. Tex. 2016). n.8 (*citing McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1370 (S.D. Fla. 2009), aff'd, 398 Fed. App'x 467 (11th Cir. 2010)).

76.   Plaintiffs may therefore establish emotional damages under RESPA via HIS own testimony. *Geoffrion*, 182 F. Supp. 3d at 666 n.8(citations omitted) (rejecting defendant's argument that Plaintiffs could not recover mental anguish damages due to lack of expert testimony or health record evidence); see also Guajardo v. GC Servs., LP, 498 Fed. App'x 379, 385 (5th Cir. 2012) (finding sufficient evidence to support award of damages for mental anguish and emotional distress under FDCPA even where jury heard contradictory proof from Plaintiffs).

77.   "[o]f the circuits that have addressed the issue, two have indicated that emotional distress damages should be allowed, while no circuit appears to have ruled that emotional damages are not allowed." *Geoffrion*, 182 F. Supp. 3d at 663 (*citing Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 Fed. App'x 543, 548, 548 n.6 (6th Cir. 2012) and *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011)).

78.   In *Houston,* the Sixth Circuit stated that it found "nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven." 505 Fed. App'x at 548 (holding that genuine

issue of material fact existed regarding whether defendant caused Plaintiffs to suffer emotional damages under RESPA where Plaintiffs averred that she experienced "stress, mental anguish, embarrassment, and humiliation.").

79.     Here, based on the aforementioned facts, Plaintiffs have presented more than enough evidence for emotional damages caused by Defendants in this matter.

**WHEREFORE,** the Plaintiffs demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

        a.   Punitive and/or treble damages;

        b.   Damages as permitted by statute;

        c.   Counsel fees; and

        d.   All other relief this Court deems necessary and just.

 

          **/s/ Joshua Thomas**
        Joshua Thomas, Esquire
        Joshua L. Thomas & Associates
        225 Wilmington West Chester Pike
        Suite 200
        Chadds Ford Pa 19317
        Tel. 215-806-1733
        Fax 888-314-8910
        Email JoshuaLThomas@gmail.com
        Attorney for Plaintiffs

Dated: 4/9/19